The WILDERNESS SOCIETY, a non-profit corporation; Great Bear Foundation, a non-profit corporation, Plaintiffs,

v.

F. Dale ROBERTSON, in his official capacity as Chief, United States Forest Service; David F. Jolly, in his official capacity as Regional Forester, Northern Region; Robert L. Schrenk, in his official capacity as Supervisor, Kootenai National Forest; United States Forest Service, an agency of the United States; and Noranda Minerals Corp., a Delaware corporation and wholly-owned subsidiary of Noranda, Inc., a Canadian corporation, Defendants.

No. CV 91–78–M–CCL.

United States District Court, D. Montana, Missoula Division.

May 21, 1993.

Karl J. Englund, Englund Law Office, Missoula, MT, Victor M. Sher, Todd D. True, Seattle, WA, Fern L. Shepard, Sierra Club Legal Defense Fund, Washington, DC, for plaintiffs.

Robert J. Brooks, Office of U.S. Atty., Butte, MT, Gary B. Randall, U.S. Dept. of Justice, Washington, DC, Doris M. Poppler, Office U.S. Atty., Billings, MT, Carolyn S. Ostby, Crowley, Haughey, Hanson, Toole & Dietrich, Billings, MT, Paul F. Hultin, James L. Harrison, William Hillhouse, II, Parcel, Mauro, Hultin & Spaanstra, PC, Denver, CO, for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Plaintiffs, The Wilderness Society and Great Bear Foundation, filed this action on May 24, 1991. The complaint comprises seven claims for relief relating to the actions of the Forest Service and non-federal co-defendant Noranda Minerals Corporation ("Noranda"), in connection with certain mining claims located in the Cabinet Mountains Wilderness in Montana.

In the first claim, Plaintiffs allege that the Forest Service has not made a final appealable decision that Noranda had valid existing rights in the subject claims as of December 31, 1983, the date minerals within the Cabinet Mountain Wilderness were withdrawn by statute from appropriation under the mining laws.

In the second claim, Plaintiffs allege that if, in fact, the Forest Service has made a final decision that Noranda has existing rights, the agency violated the National Environmental Policy Act ("NEPA") by not preparing an Environmental Assessment ("EA") or an Environmental Impact Statement ("EIS") on that decision.

In the third, fourth, fifth and sixth claims, Plaintiffs directly challenge the Forest Service's validity determination. They allege that if, in fact, the Forest Service made a final decision that Noranda has valid existing rights, it violated the Wilderness Act by 1) relying on evidence of mineralization outside of Noranda's claims; 2) relying on evidence of mineralization obtained after January 1, 1984; 3) failing to examine whether Noranda's claims were properly located; and 4) relying on an erroneous interpretation of the Wilderness Act with regard to mineral deposits outside the claims.

Plaintiffs have stated their intent that their seventh claim, alleging that Noranda has no valid existing rights, be dismissed.

Plaintiffs seek declaratory and injunctive relief. They ask the court to declare that the Forest Service has not made a final appealable decision that Noranda had valid rights in the subject claims. In the alternative, they seek a declaration that the Forest Service has violated NEPA by not preparing the appropriate environmental documentation. Finally, Plaintiffs ask the court to enjoin the Forest Service from approving Noranda's pending plan of operations unless and until the Forest Service lawfully determines that Noranda has valid existing rights.

FACTS:

In 1964, Congress designated a portion of the Cabinet Mountains a wilderness area. At the same time, Congress provided that until January 1, 1984, the mining laws would apply to wilderness areas designated by the Act, including the Cabinet Mountains, such that minerals from valid claims existing on or before December 31, 1983, could be appropriated and such claims patented even after the withdrawal date.

Prior to December 31, 1983, Noranda's predecessor, Pacific Coast Mines, a subsidiary of U.S. Borax ("Borax"), located the mining claims at issue. By December 31, 1983, Borax had collected surface samples and drilled two holes on the claims.

On February 27, 1985, the Forest Service completed a mineral claims report ("Rock Lake Report"). The report stated that Borax had discovered a valuable mineral deposit on the subject claim by December 31, 1983, and that these discoveries still existed as of February, 1985. The Regional Forester purportedly adopted the report on February 28, 1985, and concluded that the Borax discoveries constituted valid existing rights under the 1872 Mining Law and the 1964 Wilderness Act. As a consequence, the Regional Forester recommended that the Kootenai National Forest proceed with the processing of Borax's proposed plan of operations to do diamond core drilling to develop a mining plan for a silver-copper mineral deposit.

In 1988, Noranda purchased the claims from Borax. In 1989, Noranda submitted to the Forest Service a proposed plan of operations. In October of 1990, the Forest Service released for public comment a draft EIS on Noranda's application. On October 10, 1992, the final EIS on Noranda's Montanore Project mine was issued.

On August 2, 1991, Noranda applied to the Bureau of Land Management ("BLM") for a mineral patent on the subject claims. On August 22, 1991, Plaintiffs filed a protest with BLM against Noranda's application. The patent proceeding is ongoing before the BLM.

The dispositive motions currently pending before the court are Noranda's motion to dismiss, a supplemental motion to dismiss, and the Forest Service's motion for judgment on the pleadings. Additionally there are motions for protective orders, motions to compel, and motions for judicial notice. As all motions have been fully briefed and heard, the court is now prepared to rule.

DISCUSSION

Standing:

■ The first issue to be resolved is the question of standing raised in Noranda's supplemental motion to dismiss. In order to establish standing, Plaintiffs must show that "[1] they or their members have personally suffered an actual or threatened injury due to the defendant's allegedly illegal conduct, [2] that the injury can be fairly traced to the challenged conduct, and [3] that the injury is likely to be redressed by a favorable decision." *Friends of the Earth v. United States Navy*, 841 F.2d 927, 931 (9th Cir.1988) (citations omitted).

■ It is fundamental that a plaintiff's mere interest in having "the government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). To establish standing, a plaintiff must show that he is among the injured. Harm to aesthetic, recreational and environmental interests can constitute injury-in-fact. *Sierra Club v. Morton*, 405 U.S. 727, 734, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). It appears undisputed that the development of the Montanore project will adversely affect the conservation, recreational and aesthetic use and enjoyment of the Cabinet Mountains Wilderness and Kootenai National Forest.

■ Nevertheless, Noranda argues that Plaintiffs do not have standing under Article III of the Constitution and the Administrative Procedure Act, 5 U.S.C. § 702, because the effect of the challenged action is too remote. In *Idaho Conservation League v. Mumma*, the Ninth Circuit Court of Appeals addressed a very similar argument to that now raised by Noranda. 956 F.2d 1508, 1514–6 (9th Cir.1992). In that case, the court held that an asserted harm can be threatened rather than actual and can be

contingent rather than certain. *Id.* at 1515. Furthermore, the mere fact that "third parties would have to act before actual development could take place is not dispositive." *Id.* Even though the same agency was required to take an additional step, the effect was not found to be too remote. *Id.* at 1516. Therefore, the fact that the Forest Service must further act, and various federal and state permits must be acquired before any subsequent development takes place does not defeat Plaintiffs' standing.

■ Standing is established only if a plaintiff can show a causal connection between his asserted injury and the complained-of conduct and that his injury is redressable through the remedy sought. *Allen,* 468 U.S. at 751, 104 S.Ct. at 3324. The issues of traceability and redressability can be dealt with together because both are "alike in focusing on the question of causation." *Idaho Conservation League,* 956 F.2d at 1517 (citations omitted).

The causation question concerns only whether Plaintiffs' injury is dependent upon the agency's policy, or is instead the result of independent incentives governing the third parties' decision making process. *Id.* citing *Wilderness Society v. Griles,* 824 F.2d 4, 11 (D.C.Cir.1987). In this case, Noranda cannot undertake development of the Montanore Project but for the challenged decision. Therefore, traceability and redressability are established.

## Statute of Limitations:

■ The next issue which must be resolved before proceeding to the merits of Plaintiffs' claims is whether Plaintiffs are barred by the applicable six-year statute of limitations set forth in 28 U.S.C. § 2401(a). Defendants argue that Plaintiffs' claims accrued either on February 28, 1985, when the transmittal letter allegedly adopting the mineralization report was sent to the Forest Supervisor, or on March 7, 1985, when news accounts regarding Noranda's wilderness mining claims and the Rock Lake Report appeared in the local press.

The court finds that the cause of action could not have accrued on February 28, 1985, as no notice of the asserted validity determination was published at that time. I further find that the March 7, 1985, press releases were inadequate for providing notice. *See Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Based on the record before it, the court finds that the reference to the alleged validity determination in the June 14, 1985, decision notice concerning approval of the plan of operations on Noranda's mining claims provided the first legitimate notice to Plaintiffs of the validity determination. *See Id.* Accordingly, the cause of action could not have accrued before that date and Plaintiffs' claims are not barred by the applicable statute of limitations.

## Plaintiffs' First Claim:

■ In their first claim, Plaintiffs allege that no final validity determination has been made on the Noranda mining claims. Plaintiffs argue that no final determination was made on the grounds that: no document purports to be a final determination; the memorandum of February 28, 1985, does not consider relevant factors or expressly render a decision; a memorandum by a locatable minerals specialist states that the Rock Lake Report contains "advisory, non-binding recommendations;" and adequate notice, required when a final determination was made, was not given.

Plaintiffs have not directed the court to any law requiring that a final validity determination be in a particular form at the time of the decision. The court makes no finding as to the minimum requirements with which the Forest Service must comply in order to indicate that a final determination has been made; however, the court finds that on the facts of this case, a final validity determination was made.

Although purporting to be recommendatory, and stating that the extent of the valid existing rights must still be determined, the Rock Lake Report expressly considers various evidence and expressly concludes that valid rights exist. The report states:

> The assays from [the] drill holes; the evidence from surface exposures; the deposit's other characteristics listed in Chapter IX, Section C, Reserve Calculations; and

our economic evaluation lead us to the conclusion that there was physically disclosed in the date of the withdrawal a valuable silver-copper deposit that could have been mined, removed, and marketed at a profit.

Based on the conclusion that the inferred reserves represent extralateral rights, we further conclude that U.S. Borax had discovered a valuable mineral deposit on lode claims HR–73, HR–74, HR–133, and HR–134 by December 31, 1983, and those discoveries presently exist. These discoveries constitute valid existing rights under the 1872 Mining Law and the 1964 Wilderness Act.

The report was conducted by a mining geologist and a forest geologist, reviewed by the Director of Minerals & Geology, and reviewed and approved by a locatable mineral specialist.

A memorandum dated February 28, 1985, from Regional Forester Tom Coston, to the Forest Supervisor of the Kootenai National Forest, adopted the report. The memorandum states:

> You can see from studying the report that U.S. Borax has claims on which a discovery was perfected prior to December 31, 1983. These claims were validly located and maintained in all other respects. Consequently, they have valid existing rights unaffected by the withdrawal provision of the Wilderness Act.

His adoption of the report made the validity determination final.

Further, it is clear from a press release dated February 27, 1985,* and a letter from the Director of Minerals & Geology to the Northwest Regional Manager, U.S. Borax that the Forest Service intended at that time to treat the validity determination as final.

Plaintiffs' reliance on the memorandum of Locatable Minerals Specialist, Robert Newman, is not well founded. Persons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority or provide misin-

formation. *Lavin v. Marsh,* 644 F.2d 1378 (9th Cir.1981). Mr. Newman had no authority to determine the finality or appealability of a decision reserved for the Regional Forester.

■ Finally, Plaintiffs argue that since the Forest Service did not provide notice as required by 36 C.F.R. §§ 211.18(3) and 217.5, no final determination occurred. However, Plaintiffs' reliance on § 217.5 is misplaced, as 36 C.F.R. Part 217 was not promulgated until January 23, 1989.

Decisions of Forest Officers concerning the National Forest System were subject to appeal in 1985. 36 C.F.R. § 211.18(a)(1). Written notice was required to be given to Borax. 36 C.F.R. § 211.18(a)(2). As previously stated, such notice was given by letter dated February 28, 1985.

In addition, notification to other persons was permitted to be given through publication in a newspaper of general circulation. 36 C.F.R. § 211.18(a)(3). As the court previously discussed in the statute of limitations claim, the Forest Service's attempts at notice did not provide adequate notice. However, whether adequate notice was given does not change the fact that a final validity determination was made. Even if failure to provide notice was a factor to consider in determining if a final validity determination was made, in this case, the Forest Service did attempt to provide adequate notice to the public through the issuance of a press release that was printed by five newspapers. Under such circumstances, the court cannot find that the lack of proper notice shows that no validity determination has been made.

The proper remedy for failing to give adequate notice would be to remand to the agency to provide proper notice and reopen the appeals period. However, Plaintiffs' claims are properly before the court, and are currently being considered in conjunction with the validity determination being performed in the BLM patent proceeding. Through these proceedings, Plaintiffs are being provided adequate opportunity to be heard on the validity determination. In addition, no

---

* The press release states in relevant part, "It has been determined that the Borax Rock Lake deposit can be mined, removed, and marketed at a profit."

party has requested that such relief be granted. Therefore, the court sees no purpose in remanding to require that the Forest Service provide adequate notice.

**Plaintiffs' Second Claim:**

In their second claim, Plaintiffs argue that if a final validity determination was made, the Forest Service violated NEPA by failing to analyze the impacts of its decision in an EA or an EIS.

The Supreme Court has stated that NEPA has twin aims:

> First, it places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action. Second, it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decision-making process.

*Baltimore Gas and Electric Company v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 97–8, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983). Therefore, one of the principal purposes of NEPA is to include consideration of environmental concerns as a part of the [agency's] decision-making process. *Forelaws on Board v. Johnson,* 743 F.2d 677, 681 (9th Cir.1984), *cert. denied,* 478 U.S. 1004, 106 S.Ct. 3293, 92 L.Ed.2d 709 (1986).

■ NEPA requires federal agencies to file an EIS before undertaking major Federal actions significantly affecting the quality of the human environment. 42 U.S.C. § 4332(2)(C). The purpose of an EIS is to apprise agency decision-makers of the disruptive environmental effects that will flow from their decisions at a time when they retain a maximum range of options. *Conner v. Burford,* 848 F.2d 1441, 1446 (9th Cir. 1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). Thus, an EIS is not required for an action by a federal agency which is non-discretionary in character and to which no viable options or alternatives exist. *See South Dakota v. Andrus,* 614 F.2d 1190, 1193 (8th Cir.1980), *cert. denied,* 449 U.S. 822, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980); *Natural Resources Defense Council, Inc. v. Berklund,* 609 F.2d 553, 558 (D.C.Cir. 1979).

■ The Forest Service's decision-making process in determining the validity of a mining claim under § 1133(d)(3) of the Wilderness Act is not a discretionary matter of granting or denying a privilege, but rather is a non-discretionary act of determining whether rights conferred by Congress have come into existence. *See Wilbur v. United States ex rel. Krushnic,* 280 U.S. 306, 316–7, 50 S.Ct. 103, 104, 74 L.Ed. 445 (1930). (When the location of a mining claim is perfected under the law, it has the effect of a grant by the United States of the right of present and exclusive possession.)

Plaintiffs argue that an EIS should be required because a proper EIS could provide the basis for legislative or executive action to challenge, purchase or condemn mining rights which threaten destruction of a pristine wilderness area. This argument, however, looks past the purpose of NEPA, which is to ensure that the **agency** has adequately considered and disclosed the environmental impact of its actions. *Baltimore Gas,* 462 U.S. at 97–8, 103 S.Ct. at 2252 (emphasis added).

**Plaintiffs' Claims Three Through Six:**

Plaintiffs' claims three through six challenge the Forest Service's February 1985 mining claim validity determination on various substantive mining law grounds.

Noranda has filed an application for patent of the mining claims with the BLM and Plaintiffs have formally protested its issuance. As part of the patent process, the BLM, with the help of the Forest Service, will make a determination as to the validity of Noranda's mining claims. Given these circumstances, Defendants argue that these claims should be dismissed under the doctrine of primary jurisdiction.

■ The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *United States v. Western Pac. Ry. Co.,* 352 U.S. 59, 63, 77 S.Ct. 161, 164, 1 L.Ed.2d 126 (1956). Four factors must be present when the doctrine is invoked: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of

an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. *United States v. General Dynamics Corporation,* 828 F.2d 1356, 1362 (9th Cir.1987) (citations omitted).

■ Whether Noranda has valid mining claims is an issue that has been placed within the jurisdiction of two administrative bodies. However, unless a mineral claimant applies for a patent, the issue is only properly before the Forest Service. In this context, the court has found that the Forest Service has exercised its expertise and properly made a final validity determination. The court has further found that Plaintiffs have standing to challenge that determination. Noranda cannot now, after this judicial proceeding has begun, apply for a patent with the BLM in order to remove jurisdiction from this court. Even if Noranda's patent application had been made prior to filing of this suit, the court is not required to wait for a second expert agency to make the same validity determination. Therefore, the court need not defer to the BLM under the doctrine of primary jurisdiction.

Nevertheless, the court will take judicial notice of Noranda's filing of an Application for Mineral Patent with the BLM, the Protest filed by Plaintiffs in the patent proceeding, and the October 31, 1991 Notice issued by the BLM. The BLM's review of the Forest Service's validity determination will permit Plaintiffs to be heard on that issue by an expert agency during the determination process, and the BLM's analysis may aid the court in its determination of claims three through six. Therefore, the court will stay this matter pending resolution of the mineral patent proceeding.

Plaintiffs have raised the concern that since a mineral patent is not required for Noranda to develop its claim, the Forest Service may approve Noranda's proposed plan of operations before the patent proceeding is completed. However, the Forest Service has represented to the court that a plan will not be approved until the patent proceeding has ended.

As a result of the foregoing analysis,

IT IS ORDERED that Defendant Noranda's supplemental motion to dismiss on the grounds Plaintiffs lack standing to pursue their claims is DENIED.

IT IS FURTHER ORDERED that Defendant Forest Service's motion for judgment on the pleadings is DENIED to the extent that it argues that the statute of limitations bars Plaintiffs' claims.

IT IS FURTHER ORDERED that Defendant Noranda's motion to dismiss and Defendant Forest Service's motion for judgment on the pleadings are GRANTED as to Plaintiffs' claims one and two, and DENIED as to claims three through six.

IT IS FURTHER ORDERED that all further proceedings, including discovery, regarding claims three through six are STAYED pending completion of the mineral patent proceeding ongoing with the BLM. Parties shall file status reports with the court within twenty-one days after the completion of the patent proceeding.

IT IS FURTHER ORDERED that claim seven of the complaint is DISMISSED without prejudice.

IT IS FURTHER ORDERED that Defendant Noranda's requests that the court take judicial notice of Noranda's filing of an Application for Mineral Patent with the BLM, the Protest filed by Plaintiffs in the patent proceeding, and the October 31, 1991 Notice issued by the BLM, are GRANTED.

IT IS FURTHER ORDERED that Defendant Noranda's request of April 15, 1992, that the court take judicial notice of two Forest Service decisions; and Plaintiffs' request that the court take judicial notice of Noranda's September 17, 1991, filing in the BLM patent proceeding; are DENIED as moot.

IT IS FURTHER ORDERED that Defendant Noranda submit to the court for in camera inspection by June 25, 1993, those documents cited in its September 23, 1991, and December 10, 1991, motions for protective order, that Noranda claims contain confidential or proprietary information. Noranda should also file an accompanying memoran-

dum briefly explaining the confidential or proprietary nature of each document submitted. The court reserves ruling on Defendant Noranda's motions for protective order and Plaintiffs' motions to compel, to the extent they relate to allegedly confidential or proprietary information or information outside the administrative record, until a later time.

IT IS FURTHER ORDERED that Defendant Forest Service submit to the court for in camera inspection by June 25, 1993, all documents requested by Plaintiffs that contain confidential or proprietary information, that were submitted by a person other than Noranda, or were internally produced. Forest Service should also file an accompanying memorandum briefly explaining the confidential or proprietary nature of each document submitted.

IT IS FURTHER ORDERED that Defendant Noranda's September 23 1991, and December 10, 1991, motions for protective order; and Plaintiffs' October 18, 1991, and December 30, 1991, motions to compel production of documents; are DENIED as moot to the extent they do not reference allegedly confidential or proprietary information, or information outside the administrative record.

IT IS FURTHER ORDERED that Defendant Forest Service's motion for protective order is DENIED as moot.

IT IS FURTHER ORDERED that Plaintiffs' request for disposition of pending motions is DENIED as moot.

The clerk is directed forthwith to notify the parties of entry of this order.